GEORGE N. COMER *vs.* CEPHAS C. CHAMBERLAIN & others.

The birth of living children, after the conveyance by a married woman of land held by her to her sole and separate use, under *St.* 1845, *c.* 208, will entitle her husband, after her death, to an estate by the curtesy therein.

WRIT OF ENTRY. The demandant claimed title as tenant by the curtesy, upon the following facts, which were agreed in the superior court:

On the 4th of April 1846, Nathaniel C. Woodman conveyed the demanded premises to Mary W. Comer, wife of the demandant, to have and to hold the same to her sole and separate use, free from the interference or control of her husband. On the 18th of the following November, she conveyed the same by her sole deed to Nathaniel C. A. Preble, under whom the tenants claim. In November 1848 she had, for the first time, a living child born ; and died in June 1851.

On these facts, judgment was rendered in the superior court for the tenants, and the demandant appealed to this court.

*H. C. Hutchins,* for the demandant, cited *St.* 1845, *c.* 208; Gen. Sts. *c.* 90, § 19 ; *Beal* v. *Warren,* 2 Gray, 447 ; Co. Litt. 29 *b,* 30 *a; * 4 Kent Com. (6th ed.) 28, 29, 31, 32, and cases cited; 1 Cruise Dig. (Greenl. ed.) tit. v. *c.* 1, §§ 1–7, 18 ; 2 Bl. Com. 128 ; *Stoddard* v. *Gibbs,* 1 Sumner, 263, 270, 271, 272, 273.

*F. A. Brooks,* for the tenants. The wife's deed passed all her title in the premises. *Beal* v. *Warren,* 2 Gray, 458. *Conant* v *Warren,* 6 Gray, 562. This deed having been made before the birth of issue, the husband never had an estate by the curtesy While the wife was seised, there was no issue. After issue, there was no seisin. Co. Litt. 40 *a.* 1 Bright on Husb. & Wife, 113, 159. The husband takes no estate by the curtesy, because his wife's interest in the land ceased before her death. *St.* 1845, *c.* 208, § 7. Rev. Sts. *c.* 60, § 17. The premises could by no possibility have descended to the issue, and thus one of the implied conditions of the estate by the curtesy was wanting.

Comer *v.* Chamberlain & others.

If such estate ever became initiate, it was defeated by her deed. Bell on Husb. & Wife, 159. 1 Bright on Husb. & Wife, 153. 1 Atkinson on Conveyancing, (2d ed.) 255. *Pierce* v. *Hakes,* 23 Penn. State R. 243. *Clark* v. *Clark,* 24 Barb. 581.

BIGELOW, C. J. The decision of this case depends on the construction of *St.* 1845, *c.* 208, §§ 5, 7, under which the land in controversy was conveyed to the wife of the demandant during her coverture, to hold to her sole and separate use, free from the interference or control of her husband. It is obvious that the tenure which this statute created in real property so conveyed to a married woman is of a peculiar nature, unlike that by which she would hold real estate at common law. The essential difference is, that it deprives the husband, during the coverture of the wife, of all right to the use of the property or the enjoyment of its income. He has no freehold interest during the life of the wife; no seisin is vested in him, and he has no pernancy of the rents and profits. In the absence of any express provision, it would certainly be difficult to determine whether a husband would, on the death of the wife, take an interest in land so held by her during coverture, similar to that to which he would be entitled at common law on her death, having had issue living, in real property of which she was seised during coverture. The nearest analogy is that of real property held by trustees, in which the wife has an equitable estate of inheritance, the rents and profits being payable to her, to her separate use during coverture. In such case, it is held that the receipt of the rents and profits constitutes sufficient seisin in the wife to entitle her husband to his estate by curtesy, if the other requisites of such title exist during coverture. *Pitt* v. *Jackson,* 2 Bro. C. C. 51. *Morgan* v. *Morgan,* 5 Madd. 408. 4 Kent Com. (6th ed.) 31. But we are not left to trace out by analogy the right of the husband in real estate conveyed to and held by the wife by a grant in fee during coverture, under the provisions of the statute above cited. The legislature, by an explicit enactment, have declared and established his right. After providing by § 5 that a married woman, in respect to all property held by her to her sole and separate use, pursuant to the provisions of the statute,

shall have the same rights and powers as if she were unmarried, it enacts in § 7 that the husband " shall be entitled to his estate by the curtesy in all lands and tenements held by his wife, as if this act had not been passed." This language is very broad and comprehensive, and, unless controlled or limited in some way, would very clearly give to the husband the same right in real estate held by the wife under the provisions of this statute, as he would be entitled to in lands of which she was seised during coverture at common law. No such limitation is contained in the statute. Nor can we see any good or sufficient reason for restricting the terms in which this right is secured to the husband. The statute cannot be said to confine his right as tenant by the curtesy to that land only of which the wife died seised and possessed. If such had been the intention of the legislature, it is reasonable to suppose that it would have been expressed in clear and unambiguous terms, as in the previous clause of the same section relating to personal property, which is expressly confined to such personal estate as may belong to her at the time of her decease. Besides; it is clear that a wide difference is made in the provisions of the act between the right of the husband over personal estate held by the wife under its provisions, and real estate to which she was entitled in her right, and to her own use free from the interference and control of her husband. In regard to the former, the husband takes it subject to the payment of all the debts incurred by his wife either before or during marriage; while her interest only in real estate, saving the husband's estate by the curtesy therein, is liable to be appropriated to her creditors.

Even if the language of the statute was more equivocal than it really is, and we could be brought to entertain serious doubts as to the intention of the legislature, we should feel it to be our duty so to construe its provisions as to depart as little as possible from the well settled rules of the common law in regard to the tenure of real estate held by married women under its enactments, especially in relation to the interest of the husband in it after her decease. The great purpose of the statute was to secure to married women during their lives the use and enjoyment .

of their estate, both real and personal, so that it should not be interfered with by their husbands. But beyond this the legislature did not intend to extend this restriction on the rights of the husband in the estate of the wife. Certainly it would not promote the objects which the statute was designed to accomplish, to deprive him of his estate by the curtesy, which he could not enjoy until after her decease. It was with this view, we think, that the provision was inserted that the rights of the husband as tenant by the curtesy in all lands and tenements held by the wife should remain the same as if the act had not been passed. Such was the view taken of this statute in *Beal* v. *Warren,* 2 Gray, 447–459, in which this court say that " the fifth section confers on married women, holding property under the statute, the right and power of conveying such property by deed, subject only to the limitation contained in the seventh section, of the right of the husband as tenant by the curtesy." In the subsequent case of *Palmer* v. *Paine,* 9 Gray, 56, no distinct or definite opinion concerning the true construction of the seventh section of the act was intended to be expressed.

It follows from this view of the nature of the tenure vested in a married woman, under the provisions of this statute, in real estate held by her, and of the right intended to be secured to the husband, that the demandant in the present action is entitled to recover, if the essential requisites of a tenancy by the curtesy existed during the lifetime of his deceased wife. Of this there can be no doubt. There was seisin by the wife during coverture ; there were children born alive ; and the wife died during the lifetime of the husband. It is quite immaterial that the children were born after the seisin of the wife had terminated by her alienation of the land. It is well settled that the seisin of the wife need not be concurrent with the life of the child. It may either precede or follow it. " If a man taketh a wife seised of lands in fee, and is disseised, and then have issue, and the wife die, he shall enter and hold by the curtesy." Co. Litt. 30 *a. Paine's case,* 8 Co. 34. 4 Kent Com. (6th ed.) 28.

To hold that the wife by her deed, without joining her husband, could cut off his right to claim his estate by the curtesy

in lands of which she was seised, would defeat the express provision of the statute. When the estate was conveyed by the wife, the possibility of an estate by the curtesy in the husband existed. On the birth of children subsequently, this possibility became enlarged, so that the husband became tenant by the curtesy initiate. At common law, no conveyance of the wife alone, before children born, could cut off or bar this possibility. She might lose or be deprived of her seisin, but this would not defeat the husband's right. In like manner, giving full force to the language of the statute, the deed of the wife, although made before issue born, cannot have any greater effect to take away the right of the husband than it would at common law.

The view which we have taken of the intention of the legislature in the above cited provisions is confirmed by subsequent legislation on the same subject. In all the statutes since enacted in relation to property held by married women to their sole and separate use, while their rights and powers in relation to the management and disposition of their separate property are greatly enlarged, it is expressly provided that no conveyance of her real property shall be valid without the written assent of her husband; *St.* 1855, *c.* 304, § 3; 1857, *c.* 249, § 2; Gen. Sts. *c.* 108, § 10; clearly indicating that no power was intended to be given to the wife to destroy her husband's estate by the curtesy by her sole deed, executed without his consent expressed in writing.

*Judgment for the demandant.*